IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADANI EXPORTS LIMITED, | ) |
| | ) |
| Plaintiff, | )  2:05-cv-0304 |
| v. | ) |
| | ) |
| AMCI (EXPORT) CORPORATION, AMERICAN METALS & COAL INTERNATIONAL INC., XCOAL ENERGY AND RESOURCES, XCOAL ENERGY AND RESOURCES, LLC, K-M INVESTMENT CORPORATION, ERNIE THRASHER, HANS J. MENDE, and FRITZ R. KUNDRUN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER OF COURT**

Presently before the Court for disposition are the following motions:

(i) MOTION TO EXCLUDE EXPERT TESTIMONY OF COLIN GUBBINS, with brief in support, filed by Plaintiff, Adani Exports Limited (Document Nos. 179 and 180), the RESPONSE IN OPPOSITION, filed by Defendant, AMCI-Export Corporation (Document No. 189), and the REPLY BRIEF filed by Plaintiff, Adani Exports Limited (Document No. 191);

(ii) MOTION TO EXCLUDE THE TESTIMONY OF EMILY S. MEDINE, with brief in support, filed by Defendant, AMCI-Export Corporation (Document Nos. 181 and 182), the BRIEF IN OPPOSITION filed by Plaintiff, Adani Exports Limited (Document No. 187), and the REPLY BRIEF filed by Defendant, AMCI-Export Corporation (Document No. 193);

(iii) MOTION TO EXCLUDE THE TESTIMONY OF CHARLES L. TROZZO, with brief in support, filed by Defendant, AMCI-Export Corporation (Document Nos. 183 and 184), the

BRIEF IN OPPOSITION filed by Plaintiff, Adani Exports Limited (Document No. 188), and the REPLY BRIEF filed by Defendant, AMCI-Export Corporation (Document No. 193); and

(iv)  MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK GLEASON, with brief in support, filed by Plaintiff, Adani Exports Limited (Document Nos. 185 and 186), the RESPONSE IN OPPOSITION, filed by Defendant, AMCI-Export Corporation (Document No. 190), and the REPLY BRIEF filed by Plaintiff, Adani Exports Limited (Document No. 192).

The matters have been fully briefed and are ripe for disposition.

### STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which requires an expert witness to have "specialized knowledge" regarding the area of testimony.[1] The United States Court of Appeals for the Third Circuit has explained, "The basis of this specialized knowledge can be practical experience as well as academic training and credentials," and "[w]e have interpreted the specialized knowledge requirement liberally." *Betterbox Commc'ns Ltd. v. BRANDSTATTER Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) (internal citations omitted). The Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. *Id.*; see also Fed.R.Evid. 401 (defining "relevant evidence" to mean "evidence having <u>any</u> tendency to make the existence of any fact that is of consequence to the

---

[1] Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

2

determination of the action more probable or less probable than it would be without the evidence") (emphasis added)). Moreover, Rule 702 "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir .1997).

When faced with a proffer of expert testimony, the Court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). The United States Supreme Court in *Kumho Tire, Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999), extended these gatekeeping requirements to all expert testimony. In performing its gatekeeping function to determine whether an expert's report is relevant and reliable under *Daubert* and Rule 702, "the court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. . . . Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert are within the sole province of the jury." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (*citing Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

**CHALLENGES TO AMCI-EXPORT'S PROPOSED EXPERTS**

A.  **MOTION TO EXCLUDE EXPERT TESTIMONY OF COLIN GUBBINS** *(Document No. 179)*

Plaintiff, Adani Exports Limited ("Adani") seeks to exclude "most" of the expert opinions offered in the expert report of Colin Gubbins ("Gubbins"), a damage expert retained by Defendant AMCI-Export Corporation ("AMCI-Export"). Specifically, Adani seeks to exclude the opinion of

3

Gubbins in four (4) areas: (i) his opinion with regard to the "reasonableness" of the cover efforts of Adani; (ii) his "comments and opinions" with regard to the market for coal in late 2003 and 2004; (iii) his testimony with regard to market prices for coal and freight; and (iv) his opinion about the practices of "coal traders like Adani" and the legal effect of the terms and Adani's contract with GNFC.

    1.    <u>The Opinion of Gubbins With Regard to the "Reasonableness" of the Cover Efforts of Adani</u>

In his expert report, Gubbins opines as follows:

> First, the transactions that are the basis of Adani's "cover" damages were not made "without unreasonable delay" after Adani learned of the alleged AMCI Export breach in March, 2004. Adani sent it's (sic) default notice to AMCI Export on March 15, 2004, and the so-called "cover" coal was purchased by it, for the most part, some six months later, and was supplied by Adani not to GNFC, but to GEB and MSEB. To wait so many months to acquire "cover" coal in a rising market does not constitute prudent, commercially reasonable or good faith conduct. If Adani was to cover, it should have done so in March when it alleges that it learned of the alleged breach and when it actually sent AMCI Export a default notice.

Expert Report of Colin Gubbins at 7 (Document No. 161-2).

Initially, Adani objects to this opinion on the basis that "the keystone for all his opinion concerning Adani's damages and mitigation efforts" is March 15, 2004, a date provided to him by counsel for AMCI Export. This argument can be summarily rejected. The factual record presented to the Court actually contains three (3) separate and conflicting dates regarding when Adani knew of the alleged default. In the Complaint and First Amended Complaint, Adani specifically alleges the following:

4

> On March 15, 2004, Adani sent AMCI Export a formal written notice advising AMCI Export that it was in default of its obligations to deliver steam coal under the terms of the parties' agreement.

Complaint, ¶ 25; First Amended Complaint, ¶ 32 (emphasis added). The record also contains a May 7, 2004, letter from Adani to AMCI-Export in which Adani stated that it had already purchased cover coal as a result of AMCI-Export's alleged "breach of contract" and encloses a "debit note" for $7,644,000.00, which represents Adani's alleged cost of its cover purchases. Now, in its Brief, Adani contends that "it was not until June 2004 that Adani started to realize that AMCI-Export might not ever deliver coal." Adani Brief, at 12.

Clearly, the record contains inconsistent factual positions with regard to the date of Adani's knowledge of any alleged default. An expert is permitted to base his opinion on a particular version of disputed facts, which is subject to cross examination. The weight to be accorded that opinion is a question to be determined by the jury. *Perez v. Townsend Eng'g Co.*, 545 F. Supp. 2d 461, 465 (M.D. Pa. 2008) (*quoting Wakler v. Gordon*, 46 Fed. Appx. 691, 696 (3d Cir. 2002)). Gubbins has fully set forth the factual information upon which he bases his opinion. Accordingly, the Court finds and rules that it is not improper for Gubbins to measure the reasonableness of Adani's cover from March 15, 2004.

Next, Adani asserts that Gubbins has failed to articulate how the timing of Adani's alleged "cover" purchases should be judged and that the decision with regard to when to purchase coal is subjective and, therefore, not subject to expert testimony. The Court cannot agree. The reasonableness of a party's alleged cover purchases is a proper subject of expert testimony. *See, e.g., Upsher-Smith Labs, Inc. v. Mylan Labs, Inc.*, 944 F. Supp. 1411, 1432-33 (D. Minn. 1996) (considering expert opinion regarding the reasonableness of parties' attempt to cover pursuant to

5

UCC § 2-712.). Based on Gubbins' experience of purchasing coal and evaluating coal supply contracts, the Court finds that Gubbins is capable of applying his knowledge to reliably evaluate and discuss the customary practices of coal traders in the international coal industry and how those practices impact the reasonableness of Adani's alleged "cover" purchases in this case. Again, the credibility and weight of his testimony is to be determined by the jury.

In sum, Adani's request to have Gubbins' "reasonableness" opinion excluded is **DENIED.**

2.  The "Comments and Opinions" of Gubbins with Regard to the Market for Coal in Late 2003 and 2004

In his report, Gubbins opines, *inter alia*, that coal prices and freight costs rose significantly from the middle of 2003 through 2004. Specifically, Gubbins states:

> Throughout 2004 there was no indication that prices would soften. In March of 2004, waiting to buy coal required at the time would have been a huge gamble and one that a prudent buyer would not have taken. Faced with having to buy coal early in 2004, historical precedent and the information available to Adani would have demanded that Adani purchase sooner rather than later.

Expert Report of Colin Gubbins at 6 (Document No. 161-2).

Adani argues that these comments and opinions should be excluded because Gubbins is not an economist and his opinion that coal prices would continue to rise throughout 2004 is not based upon any econometric analysis or reliable methodology. In opining on the direction of the market in March 2004, Gubbins cited to published information and presented charts demonstrating both what purchasers were paying for coal and what the market sentiment was in late 2003 and in 2004. *See* Gubbins Report at 4 - 6. Adani also criticizes Gubbins because (i) he used a research assistant

6

to assist in the preparation of his expert report and (ii) his expert report does not contain references to contradictory evidence.

The law is clear that experts "may rely on the work of others" in forming their opinions. *The St. Paul Fire & Marine Ins. Co. v. The Nolan Group, Inc.,* 02-860, 2005 WL 1168380, at *9 (E.D. Pa. May 13, 2005). "Analyzing data assembled by others is neither illicit or unusual." *Southwire Co. v. J. P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 934 (W. D. Wis. 2007). "An expert may use assistants in performing his work, so long as those assistants do not exercise professional judgment that is beyond the expert's ken." *Wolkowitz v. Lerner*, No. SA CV 07-777, 2008 WL 1885770, at *4 (C.D. Cal. April 21, 2008). Therefore, it does not appear that Gubbins did anything unusual in relying upon a research assistant to help gather information to be utilized in his expert report. However, counsel for Adani will have an opportunity to question Gubbins at trial about his use of the research assistant, if he so desires.

The Court finds that Adani's criticism that Gubbins did not include references to contradictory evidence in his expert report is also without merit. It is inappropriate to preclude expert testimony simply because additional contradictory evidence exists. *Perez v. Townsend Eng'g Co.*, 545 F. Supp.2d 461, 465 (M.D. Pa. 2008). The existence of contradictory evidence is a proper subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination.").

The Court finds and rules that Gubbins reviewed a number of materials and documents which provide a sufficient reliable source of information to support his conclusions with regard to

7

the market for coal in late 2003 and 2004. Accordingly, Adani's request to exclude Gubbins' comments and opinions regarding the market for coal in late 2003 and 2004 is **DENIED.**

       3.      <u>The Opinion of Gubbins With Regard to Market Prices for Coal and Freight</u>

In his expert report, Gubbins opines as to precise market prices for coal and freight as of March 15, 2004; September 15, 2004; October 15, 2004; and November 15, 2004. *See* Expert Report of Colin Gubbins at 8-9 (Document No. 161-2). In reaching his conclusions, Gubbins states that:

> Based on my experience and expertise, and my review and analysis of 'McCloskey's Coal Report' and 'McCloskey's Fax' for the period December 2003, through the end of 2004, and 'Clarkson's Shipping Intelligence Weekly' for the period December, 2003, through November 2004, I offer the following opinions of market prices for the quality of coal offered by AMCI Export . . . ."

Expert Report of Colin Gubbins at 8 (Document No. 161-2). Additionally, in reaching his opinions, Gubbins relied in part on evidence of what Adani was paying for coal and freight during that time. Specifically, Gubbins relied upon a chart produced by Adani which reflects all of its coal transactions for vessels from China and Australia from January through December 2004. *See* Exhibit 7 to Response of AMCI-Export.

The Court finds and rules that Gubbins' opinion with regard to market prices for coal and freight is based on sufficient reliable sources of information. Adani's criticism of the conclusion of Gubbins is again a proper subject for cross-examination. Accordingly, Adani's request to exclude Gubbins' opinion with regard to market prices for coal and freight is **DENIED.**

4. <u>The Opinion of Gubbins About the Practices of "Coal Traders Like Adani" and the Legal Effect of the Terms of Adani's Contract with GNFC</u>

In Paragraph 35 of his Supplemental Affidavit, Gubbins opines as follows:

> Also, based on my training and experience, the customary practice in the international coal industry for a coal trader such as Adani (i.e., a coal trader purchasing coal for resale to a customer), was in 2003, and continues to be, to negotiate mirror image terms and conditions between its supplier on the one hand and its customer on the other . . . .

Adani seeks to exclude this opinion because "Gubbins has never sold coal, never covered, last purchased coal eleven years ago, and can not remember acting as a consultant to a trader of coal." Mot. at 19. Therefore, Adani argues that because Gubbins has no experience in the relevant factual setting, he should be precluded from testifying about customary practices for coal traders "like Adani." AMCI-Export responds that Gubbins' experience purchasing coal and evaluating coal supply contracts provides him with a basis to reliably evaluate and discuss the customary practices of coal traders in the international coal industry.

Gubbins testified in his deposition that he did not study Adani's business model and that he has never sold coal. While the Court recognizes that Gubbins has a wealth of knowledge "consulting for, and purchasing coal," the Court finds that Gubbins does not have sufficient credentials to qualify him as an expert to testify on the factual setting which is at issue - the customary practice in the coal industry for a coal trader like Adani. Accordingly, Adani's request to exclude Gubbins' opinion regarding the customary practice in the coal industry is **GRANTED.**

In his Supplemental Affidavit, Gubbins also opines as follows:

> 31. Moreover, . . . , it is my opinion that had Adani attempted to supply the coal described in AMCI-Export's offer to GNFC, not only would GNFC have been entitled to institute quality price

9

> adjustments, *but GNFC would have been entitled to terminate or cancel the contract with Adani altogether and recover damages from Adani.*

Adani seeks to preclude this opinion, *inter alia,* because the question of interpretation of a contract is for the jury. AMCI-Export counters that Gubbins was permitted to read and apply the terms of the contract between GNFC and Adani to reach his conclusion.

It is typically improper for a court to rely on expert testimony for purposes of interpreting the terms and clauses of a contract. *See Forest Creek Assoc. v. McLean Savs. and Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir.1987). The Court finds and rules that Gubbins is not qualified to interpret the contract between Adani and GNFC. He has no special expertise in contract law, and even if he did, contract interpretation is not the function of an expert. Accordingly, Adani's request to preclude Gubbins' opinion as to the legal effect of the terms of Adani's contract with GNFC is **GRANTED.**

B.    **MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK GLEASON** *(Document No. 185)*

Adani seeks to exclude all of the expert testimony proffered in the April 15, 2008 expert report of Mark Gleason ("Gleason), who was retained by AMCI Export to critique Adani's damage analysis and to proffer an alternate damage analysis. Gleason is a certified public accountant and managing director of Gleason & Associates, P.C ., a firm that provides a variety of accounting, tax, and consulting services with an emphasis in the areas of financial reorganizations, business valuations, and litigation support.

In his report, Gleason opines on the following four areas: (i) the reasonableness and timing of Adani's cover efforts, (ii) the allegedly erroneous assumption by Adani that AMCI Export

would have used Chinese instead of Australian coal; (iii) the cost savings to be shared pro-rata if Chinese coal were sourced instead Australian coal; and (iv) presents an alternative damage calculation. Adani contends that Gleason is not qualified as an expert to render these opinions because (i) "he is not an expert concerning the coal industry in general or coal trading in particular;" (ii) when opining that Adani had erroneously assumed that AMCI Export would have used Chinese instead of Australian coal, Gleason did not take into account the sworn declaration of AMCI Export's Syed Kazim in which he stated that he intended to source the coal from China; (iii) the mathematical computation Gleason used was based solely on the market prices for coal and freight opined by Colin Gubbins in his April 15, 2008 expert report; and (iv) the alternative damage calculation prepared by Gleason is based on the opined market prices for coal and freight as set forth in the expert report of Gubbins.

In response, AMCI Export responds that Gleason, a certified public accountant, possesses over thirty (30) years of highly relevant experience in providing accounting and litigation support services and that his "educational and professional background demonstrate that he possesses specialized knowledge relevant to this case. . . ." Resp. in Opp'n, at 4.

The Court finds and rules that it is clear that Gleason possesses the qualifications to present as an expert witness in some areas of accounting and financial analysis.[2] However, it is equally clear to the Court that Gleason does not possess, nor does he claim to possess, expertise with

---

[2] Gleason is a Certified Public Accountant and has received a Bachelor of Arts in Economics and a Masters in Business Administration, Finance and Accounting. In addition to his CPA license, Gleason is a Certified Valuation Analyst. He is a member of such organizations as the American Institute of Certified Public Accountants, the National Association of Certified Valuation Analysts, and the Association of Insolvency.

regard to the coal industry in general or international coal trading in particular. Furthermore, the foundation of many of Gleason's opinions were taken directly from the expert report of Gubbins, without any independent investigation by Gleason. Accordingly, the Court finds and rules that Gleason is not qualified to testify as an expert in these areas and, as such, his testimony will be precluded. Adani's motion to exclude the testimony of Mark Gleason is, therefore, **GRANTED** in its entirety.

## CHALLENGES TO ADANI'S REBUTTAL EXPERTS

A. **MOTION TO EXCLUDE THE TESTIMONY OF EMILY MEDINE (***Document No. 181***)**

Emily Medine ("Medine") has been retained by Adani to rebut the damage expert reports of Gubbins and Gleason. AMCI-Export seeks to preclude all of the testimony of Medine from the trial of this case. In the alternative, should Medine be permitted to testify, AMCI-Export requests that she should be precluded from testifying to the opinions set forth in Sections 2.4, 2.5, 2.9, 4.6, 5.0, 5.3, and 5.7 of her report.

1. The Overall Qualifications of Medine to Testify

At the outset, AMCI-Export argues that Medine is not qualified to challenge Gubbins' opinions and conclusions because "[w]hile she has general experience in the coal industry, [she] is nevertheless not qualified to critique Mr. Gubbins' report because she does not have the kind of specialized experience required to analyze the Asian coal and freight markets during the relevant period." Mot. at 7.[3]

---

[3] Additionally, AMCI-Export argues that Medine also lacks the necessary qualifications to support her attempt to critique the damage analysis conducted by AMI-Export's expert, Mark Gleason. However, because the Court has granted the

Contrary to AMCI-Export's argument, Medine testified that she is familiar with the typical steam coal specifications from Australia and China; that she has experience providing consulting services to clients with regard to forecasts for the Australian coal market; and that she purchased coal from Indonesia. Accordingly, the Court finds and rules that Medine possesses more than sufficient knowledge concerning the Asian coal market and is amply qualified to express the opinions which she has set forth in her report. Thus, Adani's request to have the testimony of Medine precluded in its entirety is **DENIED.**

2.  The Opinions of Medine Expressed in Sections 2.5, 5.0, and 5.3 of Her Report

AMCI-Export seeks to exclude Medine's opinion in Sections 2.5, 5.0, and 5.3 of her report because she disputes the use of the March 15, 2004 as the date on which Adani knew that AMCI-Export would not perform under the alleged agreement. As discussed *supra,* the record contains inconsistent factual positions with regard to the date of Adani's knowledge of any alleged default. An expert is permitted to base his or her opinion on a particular version of disputed facts, which is subject to cross examination. The weight to be accorded that opinion is a question to be determined by the jury. *Perez v. Townsend Eng'g Co.*, 545 F. Supp. 2d 461, 465 (M.D. Pa. 2008) (*quoting Wakler v. Gordon*, 46 Fed. Appx. 691, 696 (3d Cir. 2002)). Medine has fully set forth the factual information upon which she bases her opinion. AMCI-Export is entitled to cross examine

---

motion to exclude the testimony of Mark Gleason, this argument is rendered moot. Accordingly, the Court will not address AMCI-Export's objections to Sections 2.9 and 5.7 of the Medine report.

Medine on her opinion of the reasonableness of Adani's alleged delay in seeking cover.[4] Accordingly, AMCI-Export's request to exclude sections 2.5, 5.0, and 5.3 of the Medine report is **DENIED.**

    3.    <u>The Opinions of Medine Expressed in Sections 2.4 and 4.6 of Her Report</u>

In Sections 2.4 and 4.6 of her expert report, Medine opines with regard to her interpretation of the GNFC contract. Plaintiff concedes that should the Court preclude Gubbins from testifying on this issue, that Medine should likewise not be allowed to offer her opinion on the meaning of the terms of the GNFC contract. Accordingly, this request is **GRANTED.**

B.    **MOTION TO EXCLUDE THE TESTIMONY OF CHARLES L. TROZZO** (*Document No. 183*)

Charles L. Trozzo ("Trozzo") has been retained by Adani to rebut the damage expert reports of Gubbins and Gleason. AMCI-Export seeks to preclude all of the testimony of Trozzo from the trial of this case. In the alternative, should Trozzo be permitted to testify, AMCI-Export requests that he should be precluded from testifying to the opinions set forth in Section II, Opinion Nos. 3, 4, and 6 of his report.

---

[4]    AMCI-Export asks the Court to deem the March 15, 2004, date as a judicial admission because this date is referred to as the default date in both the Complaint and Amended Complaint. However, the Court declines to rule that this is a judicial admission and, accordingly, the request of AMCI-Export is denied.

1. The Overall Qualifications of Trozzo to Testify

At the outset, AMCI-Export argues that Trozzo is not qualified to testify on the subjects on which he opines because he "has no experience analyzing or participating in the international coal market, has no experience in buying or selling coal, and he has no experience forecasting coal prices." Mot. at 3. [5]

Trozzo opines that the opinion of Gubbins which concerns the coal market in 2003 and 2004, the market prices for coal freight in 2004, and the expected direction of prices of coal in March 2004 are not based upon reliable criteria, are not based upon any recognized methodology, and are not supported by the evidence relied upon by Mr. Gubbins. The record reflects that Trozzo is an economist who has studied commodity markets for more than thirty years, and in particular, has been engaged in studying market prices and forecasts of market prices for commodities. The Court finds and rules that Trozzo possesses more than sufficient knowledge concerning the international steam coal market and is amply qualified to express the opinions which he has set forth in his report. Thus, Adani's request to have the testimony of Trozzo precluded in its entirety is **DENIED.**

2. The Opinions of Trozzo Expressed in Section II, Opinion No. 4 of His Report

AMCI-Export seeks to exclude Trozzo's opinion in Section II, Opinion No. 4 of his report because he, like Medine, disputes the use of the March 15, 2004 as the date on which Adani knew

---

[5] AMCI-Export also argues that Trozzo also lacks the accounting background necessary to critique the damage analysis presented by Mr. Gleason, the certified public accountant." Brief at 9. However, because the Court has granted the motion to exclude the testimony of Mark Gleason, this argument is rendered moot.

that AMCI-Export would not perform under the alleged agreement. As discussed *supra,* the record contains inconsistent factual positions with regard to the date of Adani's knowledge of any alleged default. An expert is permitted to base his or her opinion on a particular version of disputed facts, which is subject to cross examination. The weight to be accorded that opinion is a question to be determined by the jury. *Perez v. Townsend Eng'g Co.*, 545 F. Supp. 2d 461, 465 (M.D. Pa. 2008) (*quoting Wakler v. Gordon*, 46 Fed. Appx. 691, 696 (3d Cir. 2002)). Trozzo has fully set forth the factual information upon which he bases his opinion. AMCI-Export is entitled to cross examine Trozzo regarding his opinion of the reasonableness of Adani's alleged delay in seeking cover. Accordingly, AMCI-Export's request to exclude Section II, Opinion No. 4 of the Trozzo report is **DENIED.**

3.  <u>The Opinions of Trozzo Expressed in Section II, Opinion Nos. 3, 4, and 6 of His Report</u>

In Section II, Opinion Nos. 3, 4, and 6 of his expert report, Trozzo disputes Gubbins' conclusion that Adani failed to properly effect cover. Adani Export argues that these opinions should be precluded because his testimony does not "conform with the well-established law under the UCC that proper cover must be made 'without unreasonable delay.' " Brief at 15. AMCI Export argues that under the UCC, as of March 15, 2004, Adani had to purchase cover coal "without unreasonable delay."

The trigger date for measuring delay for purchasing cover is the date by which the seller learns that he will not receive the contracted goods. As discussed *supra*, the record contains inconsistent factual positions with regard to the date of Adani's knowledge of any alleged default.

16

Trozzo has fully set forth the factual information upon which he bases his opinion(s). AMCI-Export is entitled to cross examine Trozzo on his opinion of the reasonableness of Adani's alleged delay in seeking cover. Accordingly, AMCI-Export's request to exclude Section II, Opinion Nos. 3, 4, and 6 of the Trozzo report is **DENIED.**

So **ORDERED** this 14th day of November, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:

ADANI EXPORTS LIMITED
    Byron L. Pickard, Esquire
    Thelen Reid Brown Raysman & Steiner
    Email: bpickard@thelen.com

    Douglas C. Hart, Esquire
    Leech, Tishman, Fuscaldo & Lampl
    Email: dhart@leechtishman.com

    Gerald Zingone, Esquire
    Bingham McCutchen LLP
    Email: gerald.zingone@bingham.com

    Manning J. O'Connor, II, Esquire
    Leech Tishman Fuscaldo & Lampl, LLC
    Email: moconnor@leechtishman.com


AMCI (EXPORT) CORP.
    Bruce A. Americus, Esquire
    Buchanan Ingersoll
    Email: americusba@bipc.com

    Matthew F. Burger, Esquire
    Buchanan Ingersoll & Rooney
    Email: matthew.burger@bipc.com

    Stanley Parker, Esquire
    Buchanan Ingersoll & Rooney
    Email: stanley.parker@bipc.com

    Daniel C. Garfinkel, Esquire
    Buchanan Ingersoll & Rooney
    Email: daniel.garfinkel@bipc.com

    S. Manoj Jegasothy, Esquire
    Buchanan Ingersoll & Rooney PC
    Email: smjegasothy@klettrooney.com

    Thomas L. VanKirk, Esquire
    Buchanan Ingersoll
    Email: thomas.vankirk@bipc.com

AMERICAN METALS & COAL INTERNATIONAL INC.
    Jason A. Archinaco, Esquire
    White & Williams
    Email: archinacoj@whiteandwilliams.com

    Richard M. Jordan, Esquire
    White & Williams
    Email: jordanr@whiteandwilliams.com


K-M INVESTMENT CORPORATION
    Richard M. Jordan, Esquire
    White & Williams
    Email: jordanr@whiteandwilliams.com

XCOAL ENERGY & RESOURCES
XCOAL ENERGY & RESOURCES, LLC
ERNIE THRASHER
    Jeremy A. Mercer, Esquire
    K&L Gates LLP
    Email: jeremy.mercer@klgates.com

    Joseph Leibowicz, Esquire
    Kirkpatrick & Lockhart Preston Gates Ellis
    Email: klgateseservice@klgates.com

    Syed D. Ali, Esquire
    Kirkpatrick & Lockhart Preston Gates Ellis LLP
    Email: syed.ali@klgates.com


FRITZ R. KUNDRUN
    Stuart C. Gaul , Jr., Esquire
    Thorp, Reed & Armstrong, LLP
    Email: sgauljr@thorpreed.com

    William M. Wycoff, Esquire
    Thorp, Reed & Armstrong
    Email: wwycoff@thorpreed.com

HANS J. MENDE
    William F. Ward, Esquire
    Ward McGough, LLC
    Email: wfw@wardmcgough.com