**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ADANI EXPORTS LIMITED,       )
                                            )
                 Plaintiff,           )
                                            )
                 v.               )      02: 05-cv-0304
                                            )
                                            )
AMCI (EXPORT) CORPORATION, et al,   )
                                            )
               Defendants.     )

**MEMORANDUM ORDER**

In anticipation of trial, both parties have filed Motions in Limine.  The Motions have been fully briefed and are ready for disposition.  The Motions will be addressed seriatim.

Adani's Pretrial Motion *in Limine* Concerning Contract
Formation Issues (Document No. 212)

As an initial matter the Court notes that it has previously ruled that "the question of whether a contract was formed must be resolved by the trier of fact."  Memorandum Opinion and Order of Court, at 28 (December 4, 2007).  Adani, however, has filed the instant motion in which it seeks rulings on six (6) separate contract formation issues.  The requests will be addressed seriatim.

> (1)    "that the December 10, 2003 offer submitted by AMCI Export to Adani constitutes an 'offer' as defined by § 2206 of the Pennsylvania Uniform Commercial Code, that the jury will be so instructed, and that AMCI Export shall be precluded at trial from offering evidence or argument to the contrary."

On December 10, 2003, AMCI-India, on behalf of AMCI-Export, forwarded a three-page "detailed offer" to Adani.  The letter describes itself as an "offer" four times within its

text.  In responding to the instant motion in limine, AMCI-Export did not counter the issue of whether the December 10, 2003, letter constitutes an "offer."

The Court finds that there is no triable question of fact as to whether the December 10, 2003, letter from AMCI-India, on behalf of AMCI-Export, constituted an offer as defined by § 2206 of the Pennsylvania Uniform Commercial Code and, therefore, Adani's request is **GRANTED** and AMCI-Export will be precluded at trial from offering evidence or argument to the contrary.

> (2)   "that the January 29, 2004 acceptance by Adani to AMCI Export constitutes an acceptance as defined by § 2206 of the Pennsylvania Uniform Commercial Code, that the jury will be so instructed, and that AMCI Export shall be precluded at trial from offering evidence or argument to the contrary."

This request goes directly to the heart of this litigation, *to wit:* whether the particular contract allegedly breached by AMCI-Export was ever formed.  See Memo. Opinion at 22. Interestingly, while Adani asks the Court to find that the January 29, 2004 letter constitutes an "acceptance" of the offer, in its Amended Complaint Adani asserts that on January 9, 2004 it accepted the terms of AMCI Export's December 10, 2003 offer.  See Amended Complaint, at ¶ 21.

As the Court ruled in its Memorandum Opinion, a genuine issue of material fact exists as to whether a contract was formed and that issue must be resolved by the trier of fact. For this reason, the request is **DENIED**.

(3)     "that the December 10, 2003 offer contains all of the terms
        necessary for the formation of a binding agreement pursuant to the
        Pennsylvania Uniform Commercial Code, that the jury will be so
        instructed, and that AMCI Export shall be precluded from offering
        evidence or argument that there was no binding agreement because
        the parties 'never reached agreement on numerous material
        terms'."

The detailed three-page offer letter of December 10, 2003, specifically states that

"All other terms shall be mutually agreed."   Adani argues that it accepted the offer by letter of

January 29, 2004.  AMCI-Export disputes that the January 29, 2004 letter constitutes an

acceptance.  The key issue of whether the parties agreed to the essential terms and objectively

manifested the intent necessary to form a contract is a question for the jury.  Thus, Adani's

request to preclude AMCI-Export from offering evidence or argument that there was no binding

agreement because the parties "never reached agreement on numerous material terms" is

**DENIED.**

(4)     "that AMCI Export shall be precluded from offering evidence or
        argument at trial that a binding contract was not formed because
        Adani failed to satisfy a condition precedent by posting a letter of
        credit."

In seeking summary judgment, AMCI Export argued that Adani cannot maintain its

breach of contract claim because of Adani's failure to have supplied a letter of credit.  Adani

responded that the letter of credit payment term in AMCI Export's offer was not a "condition

precedent" to contract formation under Pennsylvania law.

Under Pennsylvania law, "[w]hile the parties to a contract need not utilize any

particular words to create a condition precedent, an act or event designated in a contract will not

be construed as constituting one unless that *clearly* appears to have been the parties' intention."

Memo. Op. at 27.  The Court found that the payment term in AMCI-Export's offer to Adani

does not *clearly* indicate that obtaining of a letter of credit was a condition precedent to AMCI-Export's duty to perform under the contract and held that Adani's alleged failure to post a letter of credit opened through a first class / prime bank did not entitle AMCI-Export to summary judgment on that issue.  Accordingly, although the letter of credit payment term in AMCI-Export's offer letter of December 10, 2003, was to be a condition of the alleged contract, it was certainly not *clearly* indicated that it would constitute a <u>condition precedent</u> to the formation of the alleged contract.  Indeed, in common business practice an executed written contract is a prerequisite to securing a letter of credit from a financial institution.

Therefore, the instant request is **GRANTED** to the extent that AMCI-Export will be precluded at trial from presenting evidence or arguing to the jury that Adani's alleged failure to post a payment term letter of credit was a <u>condition precedent</u> to the formation of the alleged contract or AMCI-Export's duty to perform under the alleged contract.

This ruling does not, however, preclude AMCI-Export from presenting evidence to the jury regarding the fact that Adani did not secure / post a letter of credit.  The significance, if any, of Adani's failure to have secured and/or posted a letter of credit will be left to the jury to determine.

> (5) "that the jury will be instructed that Adani's January 29, 2004, acceptance of the December 10, 2003, offer is sufficient to form a binding contract under the terms of the Pennsylvania Uniform Commercial Code unless the circumstances unambiguously indicated that a signed writing was a prerequisite to the formation of a contract."

As noted in Paragraph (2) *supra*, the Court will not, as a matter of law, make a finding that the January 29, 2004 "acceptance" by Adani to AMCI-Export is sufficient to form a

4

binding contract under the terms of the Pennsylvania Uniform Commercial Code. Thus,

Adani's request is **DENIED.**

> (6)   "that because on six occasions prior to December 10, 2003, AMCI
> Export made vessel nominations, accepted vessel nominations
> from Adani and fixed vessels *before* both parties signed a formal
> contract, no reasonable jury could find that the circumstances
> *unambiguously* indicated that a signed writing was a prerequisite to
> the formation of the January 2004 contract at issue."

In its Memorandum Opinion of December 2007, the Court ruled on this exact issue,

citing to the parties' past course of dealing as creating an issue of fact for the jury as to whether

the parties intended to contract absent an executed written contract document:

> [I]n light of the ongoing discussions between the parties after the contract
> was allegedly formed and the parties' long history of reducing the terms of
> their agreements to writing, the Court cannot conclude as a matter of law
> that the parties formed a binding contract.  Under these circumstances, the
> question of whether a contract was formed must be resolved by the trier of
> fact.

Memorandum Op. at 28.  Adani now requests that the Court make a finding that "because of the

six occasions prior to December 10, 2003" when AMCI Export made vessel nominations,

accepted vessel nominations from Adani and fixed vessels before both parties signed a formal

contract," that no reasonable jury could find that the circumstances unambiguously indicated

that a signed writing was a prerequisite to the formation of a contract in this case.

Adani's request is **DENIED.**   The significance, if any, of the prior six occasions

when AMCI-Export made vessel nominations, accepted vessel nominations from Adani and/or

fixed vessels *before* both parties signed a formal contract, is for the jury to determine.

<u>Adani's Motion *In Limine* Concerning Damages and</u>
<u>Other Evidentiary Issues (Document No. 214)</u>

(1)     "that defendant AMCI Export Corporation ("AMCI Export") shall
be precluded from offering evidence or argument at trial suggesting
either: (a) that expert testimony is necessary for Adani to prove the
damages it suffered as the result of AMCI Export's breach of
contract, or (b) that Adani's damage calculation is somehow
deficient because it is not supported by expert testimony."

Adani has made the decision to not present its damages evidence through an expert

witness, but rather to rely upon "objective facts" within the personal knowledge of its witnesses

- Messrs. Pradeep Mittal and Vinay Prakesh Goel - to establish its alleged damages in this case.

AMCI-Export argues that both Messrs. Mittal and Goel are not qualified to calculate and testify

to Adani's alleged damages as both witnesses rely upon a "fundamentally flawed" damages

calculation.

Adani argues that Messrs. Mittal and Goel are not being offered as expert witnesses

or for lay opinion.  Rather, Messrs. Mittal and Goel are being offered as fact witnesses and will

present testimony based on their personal knowledge and experience in Adani's business

operations.

The Court finds that the issue of whether the  damages calculation of Plaintiff  is

"fundamentally flawed" is an issue upon which AMCI-Export and its attorneys will have a full

and fair opportunity to explore on cross-examination and counter through its expert(s).

Accordingly, Plaintiff's request is **GRANTED** to the extent that AMCI-Export will be

precluded from presenting evidence or argument at trial which suggests that expert testimony is

required in order to prove Adani's alleged damages or that Adani's proof of its damages is

"somehow deficient" because of the lack of expert testimony.  In AMCI-Export's case in chief,

however, Adani's factual evidence regarding damages may be countered by AMCI-Export's

expert witnesses.

> (2)   "that AMCI Export shall be precluded from offering evidence or
> argument at trial concerning Adani's purported hidden intentions
> to: (a) "string AMCI Export along" while it negotiated with other
> suppliers, or (b) not use the coal offered by AMCI Export to supply
> its customer GNFC."

This request is **DENIED** for a couple of reasons.  First, the Court previously has

held that evidence on this issue is for the jury:

> AMCI-Export contends that Adani was deliberately avoiding the
> completion of a contract because it was hoping to purchase coal from an
> alternative supplier in order to accommodate the needs of its Indian
> customers.  Adani acknowledges that it was engaged in simultaneous
> negotiations with Chinese suppliers to purchase coal, arguing that it
> wanted to supplement, rather than supplant, the coal that it sought from
> AMCI-Export.  **This dispute, while collateral to the parties' objective
> manifestations to each other, further serves to illustrate why the issue
> of contract formation in this case must be resolved by the trier of fact.**

(Memorandum Opinion, at 26 n.3).

Further,  AMCI-Export argues that this evidence is relevant because it goes directly

to the intentions of the parties.  According to AMCI-Export, evidence of Adani's dealings with

GNFC and a third party supplier may be directly relevant as to explain Adani's requests for

extensions of the terms of the December 10, 2003 letter.  The Court agrees.  The Court finds

that such evidence is admissible and proper under Rule 404(b) of the Federal Rules of Evidence

because the evidence has relevance to AMCI-Export's theory of Adani's motive, intent, plan,

and knowledge.

> (3)     "that AMCI Export shall be precluded from offering evidence or
> argument at trial concerning its theories that: (1) the specifications
> for the coal offered by AMCI Export in its December 10, 2003
> offer differed from the specifications offer by Adani to its customer
> GNFC, and that (2) the coal that would have been delivered by
> AMCI Export had it performed the January 2004 contract would
> not have met the requirements of GNFC."

The "coal specification issues" have been a hotly contested topic in this litigation for

some time and the Court has consistently rejected Adani's attempts to preclude evidence which

may reflect that Adani planned to sell the coal that it purchased from AMCI-Export to Gujarat

Narmada Fertilizer Corp. ("GNFC") and/or that the coal offered by Adani to GNFC was

materially different from that which was described in AMCI-Export's December 10, 2003

letter.

The offer letter of December 10, 2003, from AMCI-Export to Adani specifically

references GNFC and Maharashtra State Electricity Board ("MSEB") as Adani's customers and

the coal specifications are set forth therein.

Should Adani so desire, it will have the opportunity to cross-examine AMCI-

Export's witnesses on this issue or offer explanatory and/or contradictory evidence.

Accordingly, Adani's request to preclude evidence regarding "coal specification issues" from

the jury is **DENIED.**

> (4)     "that AMCI Export shall be precluded from offering evidence or argument at
> trial concerning the allegations asserted by Adani in the Complaint and First
> Amended Complaint in this lawsuit, and, in particular, shall be precluded
> from offering evidence or argument that Adani admitted that its March 15,
> 2004 letter to AMCI Export was a notice of default."

It is beyond dispute that the Complaint and Amended Complaint filed by Adani

contain the following allegation:

> On March 15, 2004, Adani sent AMCI Export a formal written notice advising AMCI Export that it was in default of its obligations to deliver steam coal under the terms of the parties' agreement.

Complaint, at ¶ 25; Amended Complaint at ¶ 32.  However, the factual record also contains two other separate and conflicting dates with regard to when Adani knew that AMCI-Export would not be delivering the subject coal and was, therefore in default of the alleged contract, *to wit*:

• A May 7, 2004, letter from Adani to AMCI-Export in which Adani stated that it had already purchased cover coal as a result of AMCI Export's alleged "breach of contract; and

• The representation of counsel for Plaintiff that Adani did not actually come to understand that AMCI-Export would not perform until **June 2004.**

As the Court has previously opined, it will be necessary for the jury to determine the point in time at which Adani knew that it would not be receiving any coal from AMCI-Export which was in breach of the alleged contract.  Therefore, it will be for the jury to decide whether the March 15, 2004 letter to AMCI-Export was a formal notice of default with ramifications. Obviously, Adani will have the opportunity to present its own witnesses on this issue and offer contradictory and/or explanatory evidence and cross-examine AMCI-Export's witnesses on the issue.

However, while AMCI-Export will be permitted to offer testimony and/or evidence that the March 15, 2004 letter was in fact a notice of default, including the fact that Adani pled it as such,  AMCI-Export will be precluded from arguing to the jury that the allegations in the Complaint and/or Amended Complaint constitute judicial admissions which are binding upon Adani.  *See* ruling, *infra*, on AMCI-Export's Motion In Limine to Preclude Plaintiff From

Offering Any Evidence That Contradicts The Statement In Its Complaint and Amended

Complaint that Plaintiff Sent a Formal Written Notice of Default on March 15, 2004

(Document No. 219).

Accordingly, Adani's request is **GRANTED IN PART and DENIED IN PART.**

(5)    "that AMCI Export shall be precluded from offering evidence or
       argument at trial, particularly through the testimony of Syed
       Kazim, concerning Indian contract law including, but not limited
       to, argument or testimony as to the meaning of "offer" and
       "acceptance" under Indian law."

The Court notes that it has previously rejected a similar request of Adani when it

moved to strike a portion of Mr. Kazim's September 12, 2007 affidavit, which addressed

commercial practices in India.  *See* Adani Brief in Support of Motion to Strike (Document No.

140).  The Court found that "Kazim's testimony is based on his personal experience, and it

goes straight to the heart of the issue in this case [i.e., contract formation]."  Memorandum

Opinion at 15.

"Usage of trade" evidence is relevant under Section 1-303 of the Pennsylvania UCC

in determining what particular language "may fairly be expected to mean to parties involved in

the particular commercial transaction in a given locality or in a given vocation or trade."  13 Pa.

Cons. Stat. Ann. § 1303(c), comment 3.

Accordingly, the Court finds that the testimony of Mr. Kazim as to the use of the

terms "offer" and "acceptance" in commercial transactions in India is directly relevant to the

issue of contract formation in this case.  The request to preclude such testimony is **DENIED.**

However, notwithstanding this ruling, Mr. Kazim will not be permitted to testify as to the law

of India concerning contract formation, including the purported  meanings of "offer" and

"acceptance" under Indian law.

<u>Defendant AMCI-Export Corporation's Motion In Limine to Exclude
Plaintiff's Damages Calculation and The Damages Testimony of
Vinay Prakesh Goel (Document No. 216)</u>

Adani has decided to not present its evidence of damages through an expert witness,

but rather present its damages calculation through the personal factual knowledge of Vinay

Prakesh Goel, an Adani employee who was former Senior Manager of the Energy and Mineral

Division of Adani and now current General Manager of Adani, and Pradeep Mittal, the former

President and current Chief Executive Officer of Adani's Energy and Mineral Division.

AMCI-Export contends that Adani's damages calculation are "fundamentally flawed" and, as

such, Mr. Goel lacks the qualifications under the Federal Rules of Evidence to testify to

Adani's alleged damages.

AMCI-Export has identified four (4) specific areas of Adani's damages calculation

which, according to AMCI-Export, are not supported by the underlying facts or applicable law

and, thus, should be excluded.  The Court has reviewed each of these areas and finds that two

of the contested areas are factual issues which the jury must decide[1] and the remaining two

issues are proper subjects for cross examination.[2]

---

[1]     It will be the responsibility of the jury to determine these factual issues: (i) whether
Adani purchased the alleged "cover" coal "in substitution" for the coal allegedly
due from AMCI-Export and (ii) whether Adani purchased the alleged "cover" coal
"without unreasonable delay."

[2]     The subject areas proper for cross examination are: (i) the assumption by Adani that
(continued...)

In support of its damages calculation, Adani proposes to present factual evidence through testimony from first hand witnesses who were actually involved in taking actions on behalf of Adani for "its cover contracts for coal and freight and the testimony of Mr. Goel and Mr. Mittal to explain Adani's cover strategy, the steps it took to effectuate that strategy, the fact that the identified cover purchases would not have been made by Adani but for AMCI Export's breach of contract, and the mathematical calculation of damages."  Response at 2.

AMCI-Export argues that the "opinion testimony" to be offered by Mr. Goel is not reliable, not supported by the factual record, and that Mr. Goel is not qualified to opine. However, Adani has steadfastly maintained that Messrs. Goel and Mittal are not being offered as expert witnesses pursuant to Federal Rule of Evidence 702 or for lay opinion pursuant to Federal Rule of Evidence 703.  Rather, Messrs Goel and Mittal are being offered as fact witnesses pursuant to Federal Rule of Evidence 701[3] based on their personal knowledge that

---

[2](...continued)
AMCI-Export would have sourced coal from China instead of Australia and that the damages calculation fails to provide any calculation of damages based on the supply of Australian coal and (ii) the issue that the damages calculation does not account for the cost savings to be shared pro-rata if AMCI-Export had sourced the coal from China instead of Australia.  Of course, the jury will also determine the weight to afford this testimony and evidence, if it determines that a damages award is warranted.

[3]    Federal Rule of Evidence 701 provides as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"Adani diverted coal from other customers on a delayed shipment by delayed shipment basis and then covered only after it concluded in or around June 2004 that AMCI Export was likely not going to perform. Adani will present evidence at trial demonstrating that its cover purchases would not have been made but for AMCI Export's breach of contract."  Response at 12.

Mr. Goel became the Senior Manager of the Energy and Mineral Division in 2001, and is currently the General Manager.  Mr. Goel has negotiated coal contracts on behalf of Adani.  Clearly, Mr. Goel possesses more than sufficient familiarity with Adani's business and operations to testify as to what Adani did with regard to its alleged cover purchases.

Pradeep Mittal became the President of Adani's Energy and Mineral Division in 1998.  He became the Chief Executive Officer ("CEO") in 2003.  As both President and the CEO of the Energy and Mineral Division, Mittal is responsible for its day-to-day management and oversight.

The Court finds that both these men possess significant personal knowledge of Adani's business operations which they acquired through their lengthy tenure and positions with Adani.

AMCI-Export also argues that Adani's damages calculation is flawed and "would encourage a jury to reach a decision on an improper basis."  Br. at 8.  However, without doubt, there are factual disputes between the parties with regard to virtually every aspect of Adani's damages claim, which preclude the Court from ruling as a matter of law that Adani's damages calculation is flawed.  As the Court has noted previously, the record contains inconsistent factual positions with regard to the date of Adani's knowledge of any alleged default.  There is

a dispute of fact about the timeliness of Adani's cover purchases.  There is a dispute of fact as to whether the coal purchased by Adani was "in substitution" for the coal that AMCI Export failed to deliver.  There is a dispute of fact concerning whether AMCI Export would have supplied coal from Chinese or Australian sources had it performed the January 2004 alleged contract.  There is a dispute of fact as to whether AMCI Export would have received profit sharing had it performed the alleged January 2004 contract, and if so, what the quantification of that profit sharing would be.

Whether cover purchases were made in good faith and without reasonable delay, and whether the goods purchased in the cover transactions were "in substitution" for the undelivered goods are generally questions of fact for the jury to determine.  However, if at trial AMCI-Export believes that it has established as a matter of law that Adani did not make cover purchases in good faith and without reasonable delay and/or that the goods purchased in the cover transactions were not "in substitution" for the undelivered goods, AMCI-Export will have the opportunity to argue the issue(s) to the Court in a Rule 50 Motion seeking judgment as a matter of law.

For these reasons, the request of AMCI-Export to exclude Plaintiff's damages calculation and the damages testimony of Vinay Prakesh Goel is **DENIED**.  Messrs. Goel and Mittal will be limited to facts and matters of which they have personal knowledge.  Adani and its counsel are cautioned that Rule 701 will be enforced and opinion testimony by lay witnesses will only be permitted if presented in accordance with Rule 701 and is (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or

14

the determination of a fact in issue, and (c) not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702.

**Defendant AMCI-Export Corporation's Motion In Limine to Preclude
Plaintiff From Offering Any Evidence That Contradicts The Statement
In Its Complaint and Amended Complaint that Plaintiff Sent a Formal
Written Notice of Default on March 15, 2004 (Document No. 219)**

Assuming that the jury reaches the issue of damages in this case, the jury will be

required to determine whether Adani's purchase of "cover" coal was proper under the

Pennsylvania Uniform Commercial Code ("UCC"), which provides that proper cover must be

made "without unreasonable delay."  Accordingly, it will be necessary for the jury to determine

the point in time when Adani knew that it would not be receiving any coal from AMCI-Export

and that AMCI-Export had indeed breached the contract.

The Complaint and Amended Complaint filed by Adani contain the following

allegation:

> On March 15, 2004, Adani sent AMCI Export a formal written notice
> advising AMCI Export that it was in default of its obligations to deliver
> steam coal under the terms of the parties' agreement.

Complaint, at ¶ 25; Amended Complaint at ¶ 32.

AMCI-Export contends that this complaint allegation is a judicial admission which is

directly relevant to the reasonableness of Adani's alleged "cover" purchases of coal.

Specifically, AMCI-Export's position at trial will be that Adani failed to properly effect cover

because, although Adani provided AMCI-Export with a "formal written notice" of default on

March 15, 2004, it did not enter into the alleged "cover" contracts until sometime between late

July 2004 and late October 2004.  AMCI-Export requests the Court to preclude Adani from

15

offering any evidence that contradicts or varies from the statement in its Complaint and Amended Complaint that Adani sent a formal written notice of default to Defendant on March 15, 2004.

The Court notes that this is not the first time that AMCI-Export has requested that the Court deem the referenced complaint allegation as a judicial admission.  The request was denied, however, by Memorandum Order of November 14, 2008.  At that time, the Court found that the factual record presented to the Court actually contained three (3) separate and conflicting dates regarding when Adani knew of the alleged default, *to wit*:

• The March 15, 2004 letter, which AMCI-Export  requests be deemed as a default letter;

• A May 7, 2004 letter from Adani to AMCI-Export in which Adani stated that it had already purchased cover coal as a result of AMCI Export's alleged "breach of contract and enclosed a "debit note" for $7,644,000.00, which represented Adani's alleged cost of its cover purchases; and

• The representation of counsel for Plaintiff as stated in Plaintiff's *Daubert* cross-briefing:

> In retrospect, counsel's characterization of the March 15, 2004 communication as a notice of default in Adani's complaint is not accurate. The communication never uses the word default and is clearly a plea for performance.  During discovery, the documents produced by both parties showed that AMCI Export continued to promise performance after that date, and that Adani did not come to understand that AMCI Export would not perform until **June 2004.**

(Document No. 187 at p. 14, n.6 (emphasis added)).

16

"Judicial admissions [] are admissions in pleadings, stipulations, etc. [] which do not have to be proven in the same litigation." *Philadelphia Reinsurance Corp. v. Employers Ins. of Wausau,* 61 Fed. Appx. 816, 819 (3d Cir. 2003) (quoting *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956)).  "[T]o be binding, judicial admissions must be unequivocal." *Philadelphia Reinsurance Corp.*, 61 F.3d Appx. at 819 (*quoting Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972)).  An unequivocal statement is one that is clear, unambiguous and expresses only one meaning. *Id.*

District courts have held, however, that when a party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight. *Sicor Limited v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995), *cert. denied,* 516 U.S. 861 (1995).

In this case, it is not disputed that the Complaint and Amended Complaint contain the allegation that on March 15, 2004, Adani sent a formal notice advising AMCI-Export that it was in default of its obligations to deliver steam coal under the terms of the parties' agreement.

After a careful consideration of the record, however, the Court concludes that to the extent that the complaint allegation can be construed as a judicial admission, Adani retracted the admission during the deposition of Vinay Prakesh Goel, who testified under oath in February 2006 that Adani did not come to understand that AMCI-Export was not going to perform until June 2004.

Additionally, the Court finds and rules that AMCI-Export will not be prejudiced by this ruling for a number of reasons.  First, AMCI-Export has been aware since the deposition of Mr. Goel in 2006 that it is the position of Adani that it was not until June 2004 that Adani

determined that AMCI-Export would not supply coal pursuant to the terms of the alleged contract.  *See* Goel Trans., at 180-81.

Next, the March 15, 2004, communication at issue was produced in discovery in 2006 and since that time AMCI-Export should have been aware that the communication itself does not utilize or contain the word "default."

Finally, AMCI-Export has been aware since discovery produced in 2006 that other evidence in the record reflects that Adani had reason to believe as of March 15, 2004, that AMCI-Export would still perform, *to wit*: (i) an e-mail from Mr. Kazim to AMCI Australia's Mr. Rhodes dated March 11, 2004 stating "[it] would be best if we can at least [sic] give them one cargo, if still available, to prove that we always had the right intention (Terry, pls advise).>> If not tonnage, we might still consider offering monetary compensation to Adani."; and (ii) an April 10, 2004, email from Adani's Pradeep Mittal to AMCI-Export's Ernie Thrasher recounting a meeting with Mr. Kazim on April 8, 2004, stating "Mr. Kazim was not able to spell out any solution by way of supply or by way of compensating our losses . . . ."

For all these reasons, the Motion In Limine to Preclude Plaintiff From Offering Any Evidence That Contradicts The Statement In Its Complaint and Amended Complaint that Plaintiff Sent a Formal Written Notice of Default on March 15, 2004 is **DENIED.**  *See also*, however, ruling on Pages 8 - 10, *supra.*

<u>Defendant AMCI-Export Corporation's Motion In Limine to Preclude
Plaintiff From Offering Any Evidence That Contradicts The Testimony
Of Its Rule 30(B)(6) Witness Who Identified The Documents Plaintiff Contends
Form the Alleged Contract in this Case (Document No. 221)</u>

Adani contends that the alleged contract on which it bases its case is contained in various written communications between the parties.  In order to determine the documents which Adani contends constitute the alleged contract, AMCI-Export served a Rule 30(b)(6) Notice of Deposition on Adani requesting the "identity and content of all documents that Adani contends form the alleged contract between the parties at issue in this lawsuit."

Adani designated Vinay Prakesh Goel as its Rule 30(b)(6) witness.  Mr. Goel's Rule 30(b)(6) deposition occurred on February 17, 2006.  AMCI-Export contends that during his deposition, Mr. Goel identified seven (7) specific documents as the documents which form the alleged contract in this case.  In this motion in limine, AMCI-Export seeks to preclude Adani from identifying at trial any additional documents which Adani claims also form the alleged contract in this case.

Adani responds that AMCI-Export has mischaracterized Mr. Goel's Rule 30(b)(6) testimony.  Adani contends that while Mr. Goel testified that the seven (7) documents comprise all of the <u>writings</u> between the parties which evidence the contract at issue, he did not testify that these writings formed the entire contract.  Rather, he testified that the seven (7) writings were only a part of the contract as these seven (7) writings do not set forth all of the terms of the agreement between the parties, as some understandings were unwritten and were to be mutually agreed upon.

The instant motion is **GRANTED IN PART AND DENIED IN PART**.  The

motion is **GRANTED** to the extent that Adani will be precluded from offering into evidence

any additional writings or documents which form the alleged contract other than the seven (7)

documents identified by Mr. Goel as comprising the writings between the parties which

evidence the parties' alleged January 2004 agreement.  However, the motion is **DENIED** to the

extent that Adani proposes to offer testimony or other evidence relevant to the terms

of the alleged agreement based on past dealings or transactions between the parties .  With that

said, counsel for AMCI-Export will be free to cross examine any witness at trial whose

testimony contradicts or it at odds with the testimony of Adani's Rule 30(b)(6) witness.


So **ORDERED** this 7th day of August , 2009.


BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Byron L. Pickard, Esquire
Thelen Reid Brown Raysman & Steiner
Email: bpickard@thelen.com

Douglas C. Hart, Esquire
Leech, Tishman, Fuscaldo & Lampl
Email: dhart@leechtishman.com

Gerald Zingone, Esquire
Bingham McCutchen LLP
Email: gerald.zingone@bingham.com

Manning J. O'Connor , II, Esquire
Leech Tishman Fuscaldo & Lampl, LLC
Email: moconnor@leechtishman.com

Bruce A. Americus, Esquire
Buchanan Ingersoll
Email: americusba@bipc.com

Matthew F. Burger, Esquire
Buchanan Ingersoll & Rooney
Email: matthew.burger@bipc.com

Stanley Parker, Esquire
Buchanan Ingersoll & Rooney
Email: stanley.parker@bipc.com

Daniel C. Garfinkel, Esquire
Buchanan Ingersoll & Rooney
Email: daniel.garfinkel@bipc.com

S. Manoj Jegasothy, Esquire
Buchanan Ingersoll & Rooney PC
Email: smjegasothy@klettrooney.com

Thomas L. VanKirk, Esquire
Buchanan Ingersoll
Email: thomas.vankirk@bipc.com